Good morning, Your Honor. Eric Valenzuela on behalf of the appellant, Renee Armenta. Thank you, Your Honors, for hearing this matter. I'd like to, well, we're here to challenge the lower court's ruling that the use of force was reasonable as a matter of law, and that even if the use of force was unreasonable, that the officer would be entitled to qualified immunity, as well as the lower court's findings dismissing the state law claims. As an initial matter, obviously, qualified immunity does not apply to the state law claims. Now, the use of force that we're here to talk about was captured on video. In watching that video, it's difficult to not have your stomach turn a little bit. It's so disturbing what's shown on that video. The use of force here was a male officer punching a woman square in the face, pulling her hair down to the ground, dragging her on the ground, and then getting on top of her while she complains that she's burning from the asphalt. Keep in mind, this is in Arizona. And then he handcuffs her, takes her to the police cruiser, then slams the car door on her foot while she's entering into the vehicle. So that is the use of force that we're here to talk about. Now, I'd like to start with first pointing out some of the statements that Officer Ross made immediately after the use of force, because I really believe those are his most unfiltered truths, if you will. One of the statements that he makes while his body camera is still recording after the use of force was that there were no traffic violations. The reason that's important, because later in his interview, in his recorded interview, he says there were traffic violations, and that was part of the reason why I pulled her over. And we know that isn't true because, one, the incident's captured on video, and two- I think he said on the video at some point, maybe it's just before he puts her in the patrol car, that it was for the revoked license. You're right, Your Honor. That is the first time that he advises her as to why she's being arrested. But in his recorded interview, he makes all sorts of false allegations, one of them being that she committed traffic violations when he tried to pull her over. But the reason that's clearly disputed is, one, it's on video and you see her clearly pull over, and two, when the officer asks him when he's discussing the incident at the scene, he tells the fellow officer there were no traffic violations. He knows. I mean, he had run the plate on the car and then checked the registration. He knew that she was unarmed. He even matched the photo. So he had- Absolutely, Your Honor. There's no dispute. Pulled over the car and pull her out and arrest her. I do not dispute that. But this goes directly to the officer's credibility and disputes the that he made at the scene shortly after the use of force was that she was probably moving back because she was a little confused or something. The reason that's important is because he's now using that as an excuse why he punched her when he admits in his own voice that she probably moved back because she was a little confused or something. Another thing that's very interesting that he says while he's at the scene, one of the officers asks him, was she being assaultive or just resistive? His response was just resistive. The reason that is so important is because pursuant to Goodyear's own policy on use of force, it says a suspect must display active aggression in order for you to use the hand strike such as a closed fist punched to the face. So by their own policy, it's indicating that there must be active aggression. And he's telling the officer at the hands behind her back. And then she instead goes to sit back down and is resisting being pulled out of the car that I mean, that is resistance, isn't it? Well, I would respectfully disagree, Your Honor, that she goes to sit back down in the car. I don't think that's shown on the video. I think what is shown on the sitting on the seat sideways out. I mean, she's not sitting forward like she's going to drive, but she's seated on the seat. She goes back down, doesn't she? Well, I would somewhat disagree with that because even in- How would you characterize it, counsel? Because there's some level of resistance. I would agree, Your Honor. So she's pulling away. Well, first of all, it's important to note she's initially completely compliant. Let's start with the thing to begin with. When the officer goes to pull her over because this is directly to the action. We've seen the video and your time is short. So I want to focus you in on the resistance. I think we can debate the level of resistance, whether that's passive, active, but there was some resistance, right? Correct, Your Honor. So what clearly established law is there that the force was excessive under these circumstances? So let's assume that there was a Fourth Amendment violation, not saying that there is, but for we can go to the second step. So what case are you relying on for clearly established law? It would be Blankenhorn v. Orange, Your Honor. That would be the case that is most specifically on point. Now, with regards to the resistance- The problem with Blankenhorn is that there, the officer struck the plaintiff after he had already succumbed. Isn't that dispositive in Blankenhorn? No. In Blankenhorn, he was not punched a few times. Some of them while he was standing- He'd already succumbed. He'd already submitted. Well, actually, there were allegations that he was still resisting when he was punched, and that was one of the issues. And in fact, Blankenhorn specifically held that, although Blankenhorn initially resisted being arrested, Nguyen's punches were not necessarily a reasonable response. So I think what Blankenhorn has held since 2007, which was over 10 years prior to the use of force in this case, is even if there is some initial resistance, a punch to the face is not a reasonable response, that the response has to be proportionate to the resistance. And here, I'd submit to you, Your Honor, first of all, the officer goes to grab her hand without telling her why she's being arrested. And I believe she just gets spooked, which is somewhat of a natural reaction when somebody lunges at you. I don't believe that is an intentional trying to resist her arrest, especially when taking in context of her actions right before that. This is a person voluntarily pulling over, voluntarily getting out of the car. She gets out of the car. What's going on? Why am I being arrested? And instead of telling her, ma'am, I just ran your name, you got a revoked license, and explaining what's going on, he immediately lunges at her. And I'd submit to you a natural reaction to that would be to kind of get scared and go back a little bit. Then he immediately grabs her arm and then slugs her in the face. And I would submit to you that level of resistance, whether you would consider it clearly does not justify punching a woman in the face. It just does not. And I think Black and Horn stands for the proposition that even if there is some level of resistance, if you respond unreasonably proportionate to the resistance that you're experiencing, that that would be a Fourth Amendment violation. I'm not here to try to argue that she did everything that the officer asked of her. I'm not doing that. But what I am is the minimal level of resistance that you see in this case clearly does not justify punching her in the face. I don't know how I couldn't put it more succinctly than that. Black and Horn condemns the specific punches there based on really kind of a very fact-specific issue about where her arms was placed. Because the idea was that he said he was her arms out from underneath him, but the video didn't support that. It wasn't clear, construing the facts. Whereas here, his claim was that the punch to the face would sort of shock her and then she'd submit, which frankly, the video seems to show worked. I mean, as soon as he punches her, she comes right out of the car and she's out. And it does seem to have the desired effect. So it doesn't seem that Black and Horn is quite on point in the specific facts. Well, let me point out some similarities between, obviously, you're not going to find a case directly on all fours where an officer goes up and punches a woman in the face. That's never tried to assault him. That's never verbally threatened him. That is unarmed and that has basically been compliant up to that point. I'd submit to you, most officers would know that would be obvious that you couldn't do it under that situation. But let me do point out some of the specifics between Black and Horn and what we have here. In Black and Horn, there's a struggle lasting a few seconds. She's forcibly taken down to the ground. She's being punched while standing. It's on video. There's an allegation that he moved the hand away from the officer. The officer grabs the arm. She tries to pull free. All of those are similar to what we have in this case. There's no taking of combative or fighting stance. There's no threatening gestures. Does not initially comply with all the commands. Is punched because they could not control the arms. Alleges that the punch is a distraction blow. And the video disputed the officer's allegations. And we believe those similarities are enough to put the officer on notice that his use of force would have been unlawful and he would have been on sufficient notice that day. Blank and Horn coming in, being decided in 2007. And in addition to Blank and Horn, I keep wanting to point back to the officer's own policies. Because if you look at the Ninth Circuit's case in Drummond, the department's policies are not only relevant as to whether the use of force was reasonable, they're relevant as to whether the officer would have known that his actions were unlawful. If their own policy is training them that you can't punch a person for being active or passive resistance and you need active aggression, his own policy would have put him on notice that the use of force was unreasonable. I don't know how you look at that video and say that that woman was being aggressive to the officer. She's constantly trying to move away from it. Trying to move away from the officer, your honors, I'd submit to you, is not aggressive behavior. If we want to talk about aggressive behavior here, the only aggressive behavior was on behalf of the officer when he punched her in the face, grabbed her hair, pulled her to the ground, and dragged her on the hot asphalt as she's complaining that it's burning. So, his policies alone, I think, would also, in addition to the established case law... Now, let's talk about qualified immunity because I think that seems to be the issue that the court is most concerned with. Now, qualified immunity could be defeated for multiple reasons, one of them being if it falls under the obvious. I would submit to you, your honors, that this that his mom taught him that at a very young age. I would submit to you, as a young man, he knows he don't hit girls even if they try to slap you, which did not occur to hear. I would submit to you, as a young cadet going through the academy and then being hired by the Goodyear Police Department, he was aware you can't punch a suspect, man or woman, but especially a woman, if they've not been assaultive, if they've not been aggressive to you, and if they've just been trying to move away from you. So, I would submit to you, this is one of those rare cases that does fall within the obvious. Has qualified immunity gone to such an extreme state that, an extreme level that an officer could escape liability by saying, well, show me a case you can't punch a woman square in the face who's not tried to assault you, who's not tried to verbally threaten you, who is not unarmed, who has displayed minimal resistance to you? I think, I hope not, but I submit to you that Blankenhorn would have put him on sufficient notice, in addition to being obvious, in addition to the disputed issues. I understand this is on video, so the disputes are a little different than you would with normal cases, but I would submit to you, look into the disputes that I pointed that he says in his own recorded interview. I mean, he goes as far as to say, she pushed my hand away from me. She pushed my hand away. I didn't pull her down to the ground. I slipped and I fell. She came towards me to push me. All of these things are clearly disputed in the video. Even in the defense's brief, he references that she pushed him and pulled him. I would submit to you that pulling away from somebody who's using excessive force against you is not pulling you towards them. In order to pull someone towards you, you got to grab them and pull you towards you. Trying to move away from somebody is not pulling them in. And I don't know where the defense got that he pushed the officer. There's clearly no push in the video. I can't even begin to where that one came from. But in reviewing that video, you do not see any assaultive. You did not see any aggressive behavior. She's clearly unarmed. Let's talk about what this whole incident started with. This is clearly a case of racial profiling by his own admission. He says, I see a Hispanic guy. He got tattoos on his face. He got piercings. He looks like in a gang. I'm going to stop this guy. So he believes this vehicle. This is not a person wanted for like an armed robbery or some serious crime. This was a revoked license. And I submit to you, when he tries to pull her over, she's compliant. So when she gets out of the car, you shouldn't have this notion in his head that this person has a weapon that's going to try to attack me. There's been no actions of this person leading up to that. A lot of the arguments in the defense's paper were, well, she could have tried to attack him, so he had to punch her first. That's without merit, Your Honor. And this attempt by both the defense and the lower court to minimize a punch to the face is really disturbing. A punch to the face could cause serious injury. It could break someone's bones in their face. It could break their jaw. It could cause them to fall to the ground and hit their head. There's a reason their own policies tell them, don't go punching people in the face unless they're being aggressive or assaultive towards you. So this trying to disrupt her bio computer, I don't know what that is, but this person is not an inanimate object like a computer. This is a woman with feelings who senses when she's being injured. So to try to compare her to a computer or just trying to hit the reset button like she was some kind of Nintendo gaming system or something is really absurd because punching somebody in the face is a serious use of force that could cause serious injury. If the suspect were to punch the officer in the face, I think we all know it would not be minimized as some kind of minimal use of force. She would have been charged with aggravated assault on a police officer likely to cause great bodily injury. So this attempt to try to minimize the use of force of a punch to the face, I really think it is without merits, Your Honor. And I see I'm running out of time. So unless there's any other further questions. All right. Thank you, counsel. Thank you. May it please the court. Summary judgment was appropriate for two reasons. One, that the uncontradicted evidence based on admissions and the video clearly established that the force that was used by Officer Ross was reasonable under the Fourth Amendment on the totality of the specific circumstances presented in this case. And two, Officer Ross and the city of Goodyear are protected from civil suit by the principles of qualified immunity. On September 6, 2018, at 1146 a.m., it is established in this record. There's two things that are troubling about this case. I mean, one is that he doesn't tell her why she's being arrested. He knew why. He knew perfectly well why. He had researched it. If he had just said right out of the box, I'm arresting you for a revoked license, he won't tell her. And she just clearly is sort of reacts to what's happening, what's going on. And she doesn't use any force against him. She does sort of back away and sits in the car and to that extent. But the resistance is totally passive. She's not aggressive towards him at all. And yet, and then he punches her in the face. So why isn't this something that a reasonable jury could find to be excessive under all the circumstances? Because addressing both your points first, the Fourth Amendment does not require that a police officer advise at that moment. But it's a relevant circuit. We have to look at all the circuit. It's relevant that he doesn't tell her. Because if he told her, it might have led to more cooperation. He didn't do something that was obvious, takes a few seconds of breath to do to get her to be more cooperative. The reality is that, again, it is not required by the Fourth Amendment. Officer Ross has his moment. He has his reasons why he's proceeding the way he is. And what we look at under the Fourth Amendment. What does the record say about why he didn't tell her? The record says because that often, in his experience, will actually trigger resistance. You start getting a debate and you start having resistance right there. And his point is he's got probable cause that's undisputed. He's got probable cause to not just stop the vehicle, but to arrest her. And in that moment, he makes his choices as to how to best get her under control, because that's the critical aspect. You've got to get a person under control. So as long as he's got probable cause, which is undisputed. Her counsel, as well, cites Blankenhorn. But in addition to Blankenhorn, we have Ninth Circuit case law that's at least a decade old that stands for the proposition that resistance situation. So why isn't this a triable case on the issue of whether her resistance was active, justifying some degree of force versus just passive resistance to which a reasonable jury could say, look, she merely pulled away for a second. She did no more than that in her confusion. And so therefore, his use of force was unjustified. Because again, that basically a jury could make findings that brings this into the Blankenhorn situation. Not on this record, not in any way, shape or form. That would absolutely violate what Justice Scalia announced in Scott v. Harris, where you would have to have a visual fiction and you would have to ignore that the video blatantly contradicts respectfully what your inquiry is. See, the Blankenhorn case as... Doesn't the video show her pulling away? Why does the video blatantly contradict her version of events? Because you have active resistance. And it's not about... And it's very clear under the Granby counterfactors that it's not just that there's a threat to the officer, which there potentially was in this case, but her aggression is shown clearly in the video. And that's why, in addition to that, I encourage the court to study the still frames, which really break down the split second by split second events, because that's part of it. And we gave the court 130 such still frames, both in the trial court and the appellate court. It's an exercise that you and your law courts can go in with the multimedia player and go, there's 30 frames per second. And you will not see, if you just run it in real time without doing the split second, which is really the objective evidence, you will see this back and forth going on. You'll see their body positions. You will see that Officer Ross is squatting down and trying to pull her, and she's pulling him back. She actually gets him inside the doorframe. And also part of the totality of the circumstances is this tight, confined space. This is with a car door open, it creates a very limited triangular space, if you will. And she's a heavy person. So she's actually got him where you just said, Judge That comes actually after the punch, but it allowed him to get the leverage to get her out. And we don't look for least intrusive means. That's not the standard under the Fourth Amendment. And we don't look to what else he could have done. We judge him for what he did do. And then we look and we apply the reasonableness under the totality of these specific circumstances. And I absolutely will question, there is no Ninth Circuit case on point. And I want to address your question, Judge Winn. The Blakenhorn case stands for the proposition that, and this is in paragraphs 15 and 16, neither tackling nor punching a suspect to make an arrest necessarily constitutes excessive force. Now with that holding, that holding is telling police that this police training technique of punching someone to distract them is actually on its face, not per se, unconstitutional. It's not per se unreasonable. So then what we do is we go into the particular and unique circumstances of this case. And we look to what Graham tells us about what police officers encounter. They are in tense, uncertain, and rapidly evolving circumstances. Now they want to talk about a because all police policy manuals are simply guidelines. And the legal standards are set by case precedent. So when you- Does the record show about at the time of the struggle to get her out of the car what he knew about the passenger? We know what he suspected and we know what later was revealed about the passenger. But what exactly did he know? Had he done any checks similar to he did? There'd be no way. It was his suspicions about a person in that neighborhood that is having a certain- He didn't know about his record? He did not at that time. But that said, if you think about how this is going to play out, if this was a routine traffic stop, which it wasn't because of resistance. In a routine traffic stop, people obey a lawful command by a police officer. If you don't obey a lawful command, that's a class one misdemeanor under Arizona law. She's committed a class one misdemeanor by driving on a revoked license. So again, he has the lawful grounds, probable cause, to arrest her, which means that there's a level of force just to take physical control in custody of a person. When she resists, which she does, and this is a back and forth, as Judge Silver probably concludes, as this video absolutely establishes and any thought to the contrary is really blatantly contradicted, as Scott V. Harris says by the video. But I also am urging, please look at those still frames because what you will see, and not just the blink of an eye, you will see this back and forth. Study the body positions. Look at the extension of the arms. Look at the struggle that's going back and forth. And all he's trying to do is get her under control and handcuffed. Now, when he gets the leverage on her, as you pointed out, Judge Collins, it worked. It was successful. So now she is down to the ground, and she's not slammed to the ground. You stop. You see how he's, there's a point where he's actually, you could see his three fingers just guiding her to the ground because they're already low to the ground. You really got to study these specific circumstances. And then watch the officer's eyes. They are trained on the passenger, and he's trying to keep control. That is one of the cornerstones of what makes force under the Fourth Amendment reasonable, is control. And again, the obvious success is this did not escalate as so many other cases do escalate because he kept them under control. Now, as he has her on the ground, he needs to handcuff her, but the car is a barrier between him and Aguilar. And he's telling Aguilar, you hear in the video, he's saying stay in the car. Now, he drags her just a full feet to reposition her to eliminate the barrier, which is proper police training. And you see a reasonable reason, not an unreasonable reason, a reasonable reason in the heat of this moment. And he's meeting the moment. Now, the first two screens he says to Aguilar is stay in the car. And yes, he uses an expletive because that's what police do. It's not pretty in these situations. And then as Aguilar is walking to that structure he then says get down. Now, voice commands is a level of force. It's low. He displays his handgun and it works. So what you don't see is any extra force being used. Once he has both Armenta and Aguilar under control, you don't see any other force. And that's also what distinguishes Blankenhorn. Blankenhorn involve multiple punches, a gang tackle by police, meaning multiple officers gang tackle them, and they used a hobble restraint. And they also cited the Davis case. Davis case involved a handcuffed person that was already in handcuffs at a casino in Las Vegas, and a police officer slammed him repeatedly, head first into a wall, fractured his neck. And the third case that they cite, Young, Young involved pepper spray and multiple baton slaps. Can I ask you a question? I'm just trying to understand how the pieces of the issues fit together. Because as I understand Arizona law, we have dependent state claims. And so the federal claim could be on the merits or it could be qualified immunity. And the state claim would be the merits and those kind of overlap. But then there's a state defense that doesn't map exactly to qualified immunity and has different elements. But one of the elements is such person makes known the purpose of the arrest or detention. Does his failure to tell her that at the outset preclude the applicability of that? No, absolutely not. Not not in the moment, because the police officer has every right to use that level of force under Arizona statutes. And you'll find them in the series that's right around ARS 13 409 and 410. And a police officer has every right to use that level of force that's reasonable to take someone into custody and under control. But what it says in 409 is a person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention. Such person uses or threatens to use physical force. And all of the following exists. And one of them is such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained. And the answer is, Judge, it's one of several factors. Again, you look to the totality of circumstances. There's no bright line for this case. It's a bright line. It says all of the following exists. And so one, two, three, one of them is true. And so it's either you make known you believe it otherwise is known, which clearly isn't true here, or cannot reasonably be made known to the person to be arrested or detained. But one of those has to apply for the Arizona defense. Otherwise, we have to do the merits. Well, on the merits, this is a lawful arrest. It is a reasonable use of force. The police officer had a problem. If we don't analyze the Fort Minton violation and only go to qualified immunity on the federal claim, what do we do with the state claim? Do we send it back for the district court to decide whether to exercise jurisdiction in the first instance? No, because there's also a series. And if you get into ARS 13, I believe it's in the 3800 series. And I apologize for not having the exact site. It also talks about a law enforcement officer, a peace officer. This is not just private citizen using force. And this is not a self-defense case. And as I said, and they brought it up, the two hypotheticals they said, what if Armenta hit Officer Ross? That's a crime. And what if a man hits a woman in a domestic violence situation? That's a crime. This is an officer using reasonable force under the Fourth Amendment. And as Judge Silver found, it's minor force. It is a single punch that is to distract. It caused a contusion that is healed in a couple days. The repositioning to get an unobstructed line of sight so that he can use voice commands. You see an officer that's very carefully on the low end of the continuum of force. And he's meeting this moment by using reasonable force. I'm sorry to interrupt. I know your time is running short. So I want to make sure I understand your answer. So the only way to get to the affirmance on the battery claim is for us to basically make a finding or agree with the district court that the force was justified. Is that right? What I'm saying is, is that under totality of circumstances, that's one way is that you find that it is a lawful level of force under state law, not under the Fourth Amendment. And I know everyone said it's the same standard. And number two, that the officer is acting in their discretion. And so when you have discretionary principles, there is a whole body of law that gives police officers common law immunity when they make exercise. And therefore, and there you have to a person would have to show a very egregious state of mind. You get into the whole law of Arizona, rebelling, gross negligence, and how you need a wicked state of mind that a police officer is acting with a lawless and front of us. I mean, in terms of the Arizona law piece of it, I'm not sure I see a real alternative to just deciding the merits of the use of force. And if we were to go against you on that, we'd have to remand that for the consideration of other issues. It would likely be more proceedings because the record before you is not developed. And we've given you what to tell you that there is qualified immunity under Arizona law that was not developed in the trial court. But the trial court did rule. And that was first and foremost with Judge Silver. This is a reasonable use of force, whether you analyze it under Fourth Amendment principles that control this court or we understand that argument. The question is, if we don't go in that direction, then what do we do with this state law claim? But we have the arguments in your overtime. Let me see if my colleagues have any additional questions. Just call in stretch for me. Yes. Is it the practice in this particular violation of driving without orders at a revoked license or expired license to actually arrest someone, take them into custody, have them booked? I'm sorry, you're asking if that's the practice. In other words, we're talking about what he could do to effectuate an arrest. But did he actually intend to take her into custody? Or was this just simply he had probable cause to do that, arguably. But what would he have actually arrested her, particularly since he really wasn't interested in her to begin with. He was interested in the passenger of the car. So the response would be the subject of intentions of Officer Ross, as Judge Silver found, is not relevant to the inquiry. The second response is. I agree with this. We could agree or disagree with that, depending on how I agree with it as a general proposition. I don't want to argue about it now. What I want to know is why he stopped the car is not that he had some subjective separate motive. It's a separate issue from what would he have actually arrested her. In other words, I'm trying to understand the talk here is he needed to do certain things to effectuate an arrest. But would under the practice in the state, would he have actually taken her into custody for this violation? Well, the answer is it depends. And it depends on how the circumstances. He has probable cause to arrest her. I agree. He has probable cause to arrest her. Is it normal to take someone who was driving with this kind of a violation and book them before a magistrate or the equivalent here? The answer is there is no normal because you have to react to the specific and particular circumstances. What is normal in a traffic stop is that people respond lawfully to a police officer's commands. They obey. And if the situation warrants that you can be cited and released at the scene, that comes with the totality of those circumstances. But this case immediately becomes up to the police officer to decide when he makes the stop, whether he's really going to take this person in custody or just or just give her a ticket, so to speak. The answer is within as long as he has lawful grounds, he has a range of things that he can do within the Fourth Amendment. In this case, he could do both. But when she resists, it changes everything. The Fourth Amendment. I just want to know. Whether in these circumstances. In this violation, this person was actually being taken into custody for the purpose of bringing her before a magistrate. And the answer is you'd have to go outside the record and speculate with respectfully to answer your question. And the reason is because each case is unique. And so what a routine traffic stop would be. If you're asking me, can there be the option of site and release? Sure. But can someone be lawfully taken down to the police station? And because you start doing a background check, you start doing other things. And that's the whole point. The danger in going down that road respectfully is it all depends on the totality of the particular and unique circumstances. What if it is found that that there is other factors in her background? The record is not developed on that. And the reason it's not is because her active resistance begins once she's out of the car and within a second or two. And that changes everything. And the danger in going down your road, which I respectfully submit is not the relevant inquiry, is you have before you the objective factual record between their admissions and the objective video. And that's you have to judge under the Fourth Amendment. It's reasonable. And we don't hindsight police officers. We don't Monday morning quarterback police officers. What we do is we ask, did they act reasonably in that moment? Did they meet the moment lawfully? In this case, it's exceptional. Why don't you just give her a ticket? And most traffic stops. I shouldn't talk about it since I don't even have a driver's license and I don't drive. But in most traffic stops speeding, which arguably is more serious and for the moment could be more serious than driving with a revoked license or one that's been the one that's expired. The police officer walks up to the driver, one police officer stands back and they have a conversation and nobody gets out of the car. Is that so? I hear he he did. He was asking. He was not interested in her. He was interested in the other person in the car. He said that arresting our mentor was a pretext to questioning Aguilar. That is a police officer who is patrolling his assigned area that day. As long as he's acting reasonably, that is good police work. And and he's it's not like he took Aguilar into custody. He was maybe he was going to to go down this road, ask him if he could talk to him. What is he doing? What is he in that neighborhood for? It doesn't get to that point. But what we asked under the Fourth Amendment is, did the police officer have lawful grounds to do the things he did? And that's exactly the question. Counsel. Right. Thank you very much. Can I just have just one minute to just not one minute. I'll take I'll take 30 seconds and I appreciate that. Whether you look at this under the this was reasonable use of minimal force under the totality of circumstances and you balance it against the substantial government interest to use some force of Judge Silbert found because because of the active resistance, which you see on that video. And as Scott V. Harris tells us, we must look at that objective evidence. That's why the hair pull doesn't exist. The slamming of the foot is something later and it's an accident. And you don't get into that. You look at whether the distraction punch, which is minimal force and the reposition pull, which is also minimal force against the substantial interest to be able to lawfully arrest her. People are not allowed to resist. And when you look at the case law that leads right into the second prong of qualified immunity, what you have is you have an officer that he's trained in these techniques. He administered them respectfully. He absolutely got her under control. So there's really insignificant harm, a bruise, a couple of scratches, and Aguilar himself has no issues and no harm. This is commendable police work, but that's also not the standard. The standard is reasonable. I thank you so much. Thank you very much. All right. Our questions actually took you well over time. So let me put two minutes on the clock for plaintiff's counsel. Thank you. I'll be brief, Your Honor. I want to address something because I think misrepresented the record. Their motion for summary judgment attacked our state law claims. Make no mistake about it. They sought to dispose of our state law claims. We opposed it. The issue was briefed and the judge decided based on the briefing. So to say the record was not developed is just simply false. The judge, after reading the briefing, decided that the use was reasonable under the state law claim. So if this court finds that the use of force was reasonable, we would ask to overturn the lower court's ruling that the force was reasonable and allow these claims to proceed to trial. So to say that the record was not developed on this was just simply false. So I needed to address that really quick. In the event with regards to qualified immunity, in the event that the court were to find that the law was not clearly established at the time, we would ask this court to issue an opinion clearly stating that this use of force was reasonable. I think that is very important. With regards to counsel made an argument that the policies don't matter. It's case law that matters. Well, first of all, I'd submit to you, Drummond obviously is case law that was published in the Ninth Circuit, and it clearly says that the policy is both relevant to one, whether the use of force was reasonable, and two, whether they knew the force was reasonable. Now, there were some comments by the court about why didn't he just tell her why she was being arrested? Their own policy specifically says when you pull someone over, if feasible, tell them why they're being arrested. It'll probably deescalate the situation. Instead, he did the actual opposite and escalated the situation by reaching and grabbing at her. Clearly based on the video alone, your honors, a jury could find that this use of force was excessive and unreasonable based on the video alone. I don't know how you look at that video and say it's clearly contradicted under Harris. I believe that argument has no merit. Now, clearly we believe that the appellant had a right to defend herself. If he lunges for her and tries to pull her down, she doesn't need to allow herself to go straight to the ground and land on her face if you would. It's a natural reaction to try to brace yourself when someone lunges at you and pulls down. I see that I'm over the clock now, so I'll stop unless there's any further questions. Thank you, your honors. Appreciate that, counsel. Thank you very much to both sides for your argument today. The matter is submitted.
judges: NGUYEN, COLLINS, Korman